UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BONNIE PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 4:23-CV-195 |
| ) | |
| MADISON CONSOLIDATED ) | |
| SCHOOLS, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Bonnie Phillips, ("Phillips"), by counsel, files this Complaint and Demand for Jury Trial against Madison Consolidated Schools pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. 2000e *et seq*.

### I.   PARTIES, VENUE, AND JURISDICTION

1. Phillips is a citizen of Indiana and a resident of Madison, Indiana.

2. Madison Consolidated Schools ("MCS") is the public school district for Madison, Indiana schools in Jefferson County, Indiana and Phillips's former employer.

3. Phillips, a female, is a former "employee" of MCS as defined in Title VII, 42 U.S.C. § 2000e(f).

4. MCS is an "employer" as defined in Title VII, 42 U.S.C. § 2000e(b).

5. At all relevant times herein, MCS was an "employer" as defined in the FMLA, 29 C.F.R. § 825.104.

6. This Court has personal jurisdiction over Plaintiff and Defendant and venue is proper in this Court.

7. This Court has original subject matter jurisdiction over Plaintiff's claims, pursuant to 28 U.S.C. § 1331, in that the claims arise under the laws of the United States, and particularly the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. 2000e *et seq*.

8. Venue is proper pursuant to 28 U.S.C. § 1391, in that MCS is subject to personal jurisdiction in the Southern District of Indiana, MCS regularly conducts business activities within the Southern District of Indiana, and the events giving rise to the claims occurred in the Southern District of Indiana.

9. Phillips satisfied her requirements to exhaust administrative remedies under Title VII by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against MCS on August 25, 2022, with subsequent amendment on October 31, 2022 (Charge No. 470-2022-04306).[1]

10. On or about October 26, 2023, the EEOC issued a Notice of Right to Sue related to Phillips's Charge of Discrimination against MCS.

## II.   FACTUAL ALLEGATIONS

11. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

12. Phillips is a former employee of MCS, hired in 2013.

13. Phillips's most recent position at MCS was Director of Finance and Human Resources.

14. In 2019, MCS added food service as an additional duty to Phillips' role.

15. MCS did not provide Phillips with any additional compensation for her additional food service duties.

---

[1] At the time of filing her EEOC Charges, Plaintiff's last name was Hensler. Plaintiff's last name has since changed to Phillips.

16. In 2021, during discussion of administrator salary increases, Phillips complained to MCS's then-Superintendent, Dr. Jeff Studebaker, of discriminatory pay practices.

17. Specifically, Phillips reported that when she took on additional food service duties, she was not provided any additional compensation. However, other male administrators who were assigned additional duties did receive additional compensation commensurate with those additional duties.

18. Former Superintendent Studebaker told Phillips that the Board was not inclined to give her any additional compensation for her extra duties because she had taken FMLA leave.

19. Former Superintendent Studebaker also advised that if Phillips made a formal complaint of discriminatory pay, it would not "end well" for her, and stated that he did not advise her to take it further.

20. On or around April 1, 2022, the MCS Board announced that Superintendent Studebaker had resigned his position.

21. On or around April 20, 2022, the MCS Board approved Dan Noel to serve as Interim Superintendent of MCS.

22. In May 2022, a female MCS employee reported to Phillips, in Phillips' capacity as Director of Human Resources, that the employee was experiencing workplace sex discrimination and harassment.

23. The employee's allegations involved Interim Superintendent Noel, to whom Phillips then reported.

24. The MCS Board retained Josh Stigdon, an outside attorney, to complete an investigation of the female employee's complaints.

25. On or around June 21, 2022, during an interview with Stigdon, Phillips reported her own experience of sex discrimination and MCS's retaliation against her for taking FMLA leave.

26. Specifically, with respect to sex discrimination, Phillips reported that when she took on additional food service duties, she was not provided any additional compensation.

27. Phillips compared her experience with that of male administrators who did receive additional compensation when they were assigned additional duties.

28. With respect to FMLA retaliation, Phillips reported to Stigdon that former Superintendent Studebaker made negative and job-threatening comments about Phillips's previous use of FMLA leave.

29. Phillips also reported other concerning comments, harassment, and discriminatory interview practices directed at other female employees to Stigdon.

30. Phillips's complaints to Stigdon, who acted at the direction of MCS in his capacity as investigator, constituted protected activity under Title VII and FMLA.

31. MCS did not follow up with Phillips about her Title VII and FMLA complaints.

32. Instead, MCS began actively seeking to discharge Phillips from her employment.

33. MCS's fiscal year ended June 30.

34. In June 2022, prior to the end of the fiscal year, Phillips submitted a request to Interim Superintendent Dan Noel to roll over five days of vacation time from the previous year, as had consistently been the precedent.

35. Interim Superintendent Noel told Phillips that her request would be handed off to the incoming Superintendent.

36. On or around July 13, 2022, MCS named Dr. Teresa Brown as the district's new Superintendent.

37. In July-August 2022, Phillips took approximately two weeks of leave to receive medical treatment.

38. Phillips submitted medical documentation supporting her need for medical leave, but did not have a chance to complete FMLA paperwork before she was fired.

39. While Phillips was on medical leave, and immediately following her return, the new Superintendent Brown bombarded her with work requests.

40. Superintendent Brown was critical of Phillips for not getting things done while Phillips was out for two weeks on medical leave.

41. On or around August 2, 2022, as Phillips was entering her time in the school's payroll system, Skyward, she noticed that some of her vacation time was missing.

42. Phillips asked MCS's Treasurer, Dancia Houze, about the missing vacation time and Houze informed her that her request to roll over her vacation time had been denied.

43. On or about August 2, 2022, Phillips asked Superintendent Brown about her request to roll over five days of vacation time from the previous year.

44. Superintendent Brown stated that Interim Superintendent Noel had informed her that the days were used, and that Phillips had no days to carry over.

45. Phillips explained to Superintendent Brown that she kept a spreadsheet of her daily work (during a time in period in which employees were not tracking their time in Skyward) and that she did, in fact, have days to roll over.

46. Superintendent Brown offered to review Phillips' spreadsheet to see why Interim Superintendent Noel denied the request.

47. Phillips provided the spreadsheet to Superintendent Brown by email on August 4, 2022.

48. On August 5, 2022, Superintendent Brown replied to Phillips' email, stating she (Superintendent Brown) was "told upon [her] arrival that attendance in general is an ongoing concern for [Phillips]."

49. MCS had never notified Phillips any performance issues relating to any alleged attendance concerns (or otherwise).

50. Superintendent Brown scheduled time to meet with Phillips on August 11, 2022 at 11:00 a.m. to discuss the vacation day discrepancy further.

51. Superintendent Brown refused to count the days which Phillips worked from home as days worked, which had previously been standard practice and was approved by Phillips' then-supervisor, Interim Superintendent Noel, and her previous supervisor, Dr. Studebaker.

52. Other employees were permitted to work from home, and count their days working from home as days worked.

53. Confusion remained over Phillips' roll-over request, and as the school year was quickly approaching, Superintendent Brown pressured Phillips to resolve those issues quickly.

54. Superintendent Brown instructed Phillips to make corrections to her time in the Skyward system.

55. On or about August 10, 2022, in preparation for her meeting with Superintendent Brown, Phillips sent an electronic change request to Superintendent Brown in the Skyward system, and also printed a copy of her changes for Superintendent Brown's approval.

56. On August 11, 2022, Superintendent Brown called Phillips in to meet at 9:00 a.m. (they were scheduled to meet at 11:00 a.m.).

57. Superintendent Brown allowed Phillips to retrieve her printed records before beginning the meeting, but before Phillips was given an opportunity to present the corrected records for approval, Superintendent Brown accused Phillips of "falsifying records" in the Skyward system.

58. Superintendent Brown accused Phillips of failing to follow MCS internal procedures because Phillips did not fill out a Time Off Request Correction Form before submitting the changes for approval in Skyward, even though Superintendent Brown knew that Phillips' department was extremely busy and shorthanded because one of Phillips' staff members who would normally be involved in that process had been sent to a different school to fill in as a clerk.

59. Phillips could have circumvented Superintendent Brown's approval in the Skyward system, but did not. Instead, she presented her changes to Superintendent Brown for approval. The change request that Phillips submitted could not be posted in the system without Superintendent Brown's approval.

60. Additionally, Superintendent Brown accused Phillips of wrongdoing for using a district credit card to participate in a human resources course for professional development and take an assessment which had not yet been completed.

61. Superintendent Brown demanded that Phillips produce a certificate of completion for the professional development course. MCS had never previously requested certificates of completion for professional development activities.

62. MCS's standard and consistent practice had been for Phillips and other employees to use the district credit card for professional development expenses.

63. Phillips did not violate any MCS policy by using the district-issued credit card to pay for professional development expenses.

64. Phillips explained that she had attempted to take the assessment in July 2022 under remote supervision, but encountered technical issues and was required to reschedule the assessment.

65. Phillips had to miss some of her professional development classes following Superintendent Studebaker's abrupt resignation, which caused Phillips to take on additional responsibilities. Phillips was instructed by two previous superintendents to skip paid-for professional development activities when work issues took priority.

66. Superintendent Brown then informed Phillips that she was being placed on administrative leave.

67. During the August 11, 2022, meeting, Phillips tried to bring up her discrimination concerns, but Superintendent Brown refused to allow Phillips to discuss the concerns she had raised about harassment and intimidating behavior, and placed Phillips on administrative leave.

68. Male administrators who have engaged in far more egregious conduct have been treated more favorably than Phillips.

69. On August 15, 2022, Superintendent Brown provided Phillips a "Preliminary Notice of Consideration to Cancel Employment Contract."

70. On August 25, 2022, Phillips filed an EEOC Charge of Discrimination.

71. On September 8, 2022, thirteen days after Phillips filed an EEOC Charge, Phillips's then husband, Chuck Hensler, who is employed by Super ATV, was called into the office of Super ATV's President/CEO, Lindsay Hunt.

72. Hunt informed Hensler that someone from MCS, who did not disclose their identity, contacted her and asked her to pressure Hensler to encourage Phillips to resign from her job, and not to move forward with her EEOC claims against MCS.

73. The MCS agent, whose identity is unknown, reportedly indicated that if Phillips moved forward with her EEOC claims, it would become public and would be an embarrassment for Phillips and Hensler.

74. On September 22, 2022, at the recommendation of Superintendent Brown, the MCS School Board voted to terminate Phillips's employment.

75. After her termination, Interim Superintendent Noel told Phillips that the Board had been looking for a way to "get rid of" her, but did not have adequate grounds to do so.

### III. LEGAL ALLEGATIONS

#### Count I: Violation of Title VII of the Civil Rights Act – Discrimination

76. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

77. In 2019, MCS assigned additional food service duties to Phillips.

78. MCS did not provide Phillips with any additional compensation for her additional food service duties.

79. More than one male administrator who was assigned additional duties received a pay increase as compensation for those additional duties.

80. One male administrator who was assigned additional curriculum duties received an approximately $8,000 pay increase as compensation for those additional duties.

81. MCS refused to pay Phillips for her additional duties.

82. MCS paid Phillips differently and less favorably than at least one male administrator because of her sex, female.

83. As a result of MCS's violation of the Equal Pay Act, Phillips has suffered damages in lost wages, compensation, benefits, and emotional distress.

### Count II: Violation of Title VII of the Civil Rights Act – Retaliation

84. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

85. Phillips engaged in protected activity by reporting sex discrimination to former Superintendent Studebaker.

86. Phillips engaged in protected activity by reporting sex discrimination to attorney Stigdon, an attorney hired by MCS to conduct a workplace investigation, in June 2022.

87. Phillips engaged in protected activity by raising gender discrimination concerns to Superintendent Brown in a meeting on August 11, 2022.

88. Phillips engaged in protected activity by filing an EEOC Charge of Discrimination on August 25, 2022.

89. Phillips suffered one or more adverse employment actions, impacting the terms and conditions of her employment, including but not limited to suspension and termination.

90. But for Phillips's protected activities, Defendant would not have taken adverse employment actions against her.

91. Phillips has suffered damages as a result of Defendant's retaliatory actions, including but not limited to back pay, front pay, loss of future earning capacity, employer provided benefits, and emotional distress damages.

92. Phillips has suffered emotional distress as a result of the discrimination.

### Count III: Violation of FMLA – Retaliation

93. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

94. On or around June 21, 2022, Phillips engaged in protected activity by reporting Dr. Jeff Studebaker's negative and job-threatening comments about her previous use of FMLA leave to Josh Stigdon, an attorney hired by MCS to conduct a workplace investigation.

95. In or around July 2022, Phillips took FMLA-eligible leave to receive emergency medical treatment.

96. MCS terminated Phillips before she could complete FMLA paperwork for her emergency medical leave.

97. Phillips suffered one or more adverse employment actions, impacting the terms and conditions of her employment, including but not limited to suspension and termination.

98. But for Phillips's FMLA-eligible leave, Defendant would not have taken adverse employment actions against her.

99. But for Phillips's protected activity under the FMLA, Defendant would not have taken adverse employment actions against her.

100. Phillips has suffered damages as a result of Defendant's retaliatory actions, including but not limited to back pay, front pay, loss of future earning capacity, and employer provided benefits.

## IV. RELIEF REQUESTED

Phillips requests the following relief:

a. Back pay, front pay, and lost benefits;

b. Compensatory damages;

c. Liquidated damages and/or punitive damages;

d. All costs and reasonable attorney fees incurred in litigation of this action;

e. Pre-judgment and post-judgment interest; and

f. Any and all other legal and/or equitable relief to which Phillips is entitled.

WHEREFORE, Plaintiff Bonnie Phillips requests a judgment in her favor, the costs of this action, a trial by jury, and for all other just and proper relief.

December 7, 2023

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Bonnie Phillips*

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
kathleen@delaneylaw.net
aconklin@delaneylaw.net

## **JURY DEMAND**

Plaintiff, Bonnie Phillips, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,


*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Bonnie Phillips*

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
aconklin@delaneylaw.net